Carr, J.
It would be wrong to let in parol evidence to explain or alter the written agreement for the sale of the land. We must take the agreement uninfluenced by that evidence, since there is no allegation in the pleadings of fraud, surprize or mistake. Yet we may resort to the cotemporary and subsequent acts of the parties themselves (as this court has said-in several cases) to shew how they understood the contract. And I will remark here, that I consider Bierne *63 as so far identified with Alexander,—as having so completely taken his place,—that his acts may be taken as the acts of a party.
The contract itself impresses me with the idea, that both buyer and seller thought, that the one was selling and the other buying a hundred acres of land at 20 dollars per acre, making 2000 dollars for the hundred acres. Erskine sells his tract containing a hundred acres. This seems to me, not a description, but a representation of (quantity, which would bind him to make good the quantity of a hundred acres, for 2000 dollars. If so, the obligation ought surely, to be reciprocal; binding Alexander to pay for any excess.The whole conduct of Bierne shews, that he understood the sale to be by the acre: he refused a deed without a previous survey, and it was only after the survey shewed an excess, that he took the opposite ground.
I do not think it necessary to send back the case for another survey. There was not the shadow of a contest in the court below on that point. The parties received the survey, and went to hearing without exception to it; it is too late to take it here. I am for affirming the decree.
Cabell and Brooke, J concurred.
Tucker, P.
I think the decree clearly right. I consider the original contract between the parties, as having been entered into under an innocent mistake of both as to the quantity of land contained in the tract conveyed. That tract was held by Erskine under his father’s will, and Alexander so understood it to have been. By that will, a hundred acres were devised to Erskine, which it seems had been carefully laid off for that quantity; for ninety-four acres were laid off first, and then six acres more were laid off to complete the quantity which the father designed to give to this son. No wonder, then, that he supposed he held exactly a hundred acres; and no wonder that Alexander also so understood it. It was not a case in which hazard was incurred or eschewed by either party. It was a case (as the whole transaction clearly proves) in which each took *64 ^ ^01’ granted, that there was that identical quantity, and in therefore, as there proves to be an excess, it appears there was an innocent mistake on both sides. Against this, either was entitled to relief, according to well received principles, and on the authority of Quesnel v. Woodlief now well reported 6 Call 218.
If the case was doubtful in this view of it, it is clear in another. Erskine being prepared to make a deed before the excess was discovered, Bierne, who was at that time the party concerned, inquired of Erskine whether it had been surveyed; and learning that it had not been surveyed, all together, he said, he was going to Alabama, and wished Erskine to let it stand till he returned home, and could have it surveyed; that he wished to know whether there was a hundred acres of it or not. Why ? What had the ascertaining of that fact to do with making the deed? It must be understood, as conveying his interpretation of the contract, that there was to be a hundred acres in the tract. To this Erskine assented; he agreed to wait. A survey was made, and when there turned out to be an excess, instead of a deficiency, Bierne refused to pay for the excess. In Fleet v. Hawkins, 6 Munf. 188. the tract was actually sold for 15 dollars per acre; yet the purchaser having agreed to take the tract by the old survey, was held to be bound by that agreement, though in conflict with the terms of the contract. So here, Bierne having insisted that there should be a survey, with no other possible view than to get a deduction, if there was a deficiency, and Erskine having assented to it, the parties must abide the result. Whether we consider the transaction as a new agreement or not, it is the same thing. If it was a new agreement, by which compensation was to be made for risque or deficiency, then Bierne is clearly bound. If we look upon it only in the light of Bierne’s insisting on that as the true interpretation of the old agreement, and Erskine’s acquiescing, Bierne cannot now be permitted to recede from the ground he has taken, when the fact has turned out differently from what he expected.
Decree affirmed.